## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ASHLEY SANDERS,**

    *Plaintiff,*

    v.

**CLARITY SERVICES, INC.,**

    *Defendant.*

Case Number:


**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Ashley Sanders** ("**Ms. Sanders**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Clarity Services, Inc.** ("**Clarity**"), stating as follows:

## PRELIMINARY STATEMENT

1.     This is an action brought by Ms. Sanders against Clarity for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3.     Clarity is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and / or caused by Clarity within Hillsborough County, Florida, which is in the Middle District of Florida.

## PARTIES

### Ms. Sanders

5.     **Ms. Sanders** is a natural person and at all times relevant resided in Riverview, Hillsborough County, Florida.

6.     Ms. Sanders is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7.     **Clarity** is a Delaware corporation with a principal business address of 475 Anton Blvd., Costa Mesa, CA 92626.

8.     Clarity is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

9.     Clarity is a nationwide *Consumer Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other

information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail, internet, and/or telephone communications.

## FACTUAL ALLEGATIONS

### Clarity Produces Clearly Erroneous Report on Plaintiff

10.    Around October 2020, Clarity began maintaining a credit file on Ms. Sanders.

11.    At the same time, Clarity began incorporating credit information belonging to a separate, unrelated consumer into Ms. Sanders's credit file. **SEE PLAINTIFF'S EXHIBIT A.**

12.    Clarity falsely associated information apparently belonging to seven unnamed, unknown, and unrelated individuals who each have a different date of birth, into its credit file regarding Ms. Sanders. ***Id.***

13.    Thereafter, Clarity's credit file on Ms. Sanders stating she had eight different dates of birth, something which Clarity clearly knew was impossible. ***Id.***

14.    Clarity's parent company, Experian Information Solutions ("Experian"), also maintains a credit file on Ms. Sanders, but it contains only one date of birth – her correct one.

15.    Clarity's credit file on Ms. Sanders reports dates of birth ranging from 1977 to 1991, and seven different driver's license numbers, including one purportedly issued in California, a state Ms. Sanders has never resided in. ***Id.***

16.    Ms. Sander's report also contains bank account information which does not belong to her.

17.    On information and belief, Clarity's file on Ms. Sanders is an example of a *mixed file*.

18.    A *mixed file* is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

19.    On information and belief, the *mixed file* resulted from Clarity's reckless and improper methods by which it connects data reported to it by various furnishers and incorporates that data into its files.

20.    In an aggressive attempt to match every record reported, Clarity's automated system often erroneously match information to a consumer's credit file with minimal commonalities.

21.    Indeed, on information and belief, Clarity often matches data with the information in its files based on a single data point, such as the same year of birth, instead of utilizing all of the information provided to it.

22.    These erroneous matches occur even when the data from Clarity's furnishers of information contains substantially different identifying information from that of the actual consumer.

23.    Clarity knows that its automated systems erroneously match tradeline information to incorrect consumers' credit files with minimal commonalities.

24.    Despite such knowledge, Clarity has declined to correct its systems.

25.    Clarity, as a CRA, has a legal obligation to use reasonable procedures to assure the maximum possible accuracy of its consumer reports. 15 U.S.C. § 1681e(b).

26.    Despite its obligation, Clarity has sold at least 50 consumer reports to Ms. Sanders's creditors since it first "mixed" her file.

27.    Ms. Sanders learned of these events only upon review of her Clarity consumer disclosure in August 2025.

28.    Upon learning that Clarity is reporting she has eight different dates of birth, seven driver's licenses – including out-of-state ones – and other clearly erroneous data, Ms. Sanders became very concerned, as Clarity's reports concerning her contain egregiously wrong information.

29.    One of the products Clarity sells to lenders is called *Clear Digital Identity*™, which it describes as a service that "cross-references application

information, phone and email details, and exclusive Clarity data to authenticate

consumer identities and detect application fraud . . . . Comparing a consumer's

personal information against phone, email and Clarity data helps to validate the

legitimacy of an applicant's information and gives lenders a much greater

assurance that applicants are who they claim to be. A failure to authenticate some

of the data points can indicate fraud." *See* Clarity Services, Inc.,

https://www.clarityservices.com/solutions/fraud/clear-digital-identity/ (last

visited July 22, 2022).

30.    Upon information and belief, the presence of the seven other dates of

birth, combined with what are other individuals' driver's licenses and bank

account records being incorporated into Ms. Sanders's file, resulted in Ms.

Sanders's credit applications being falsely flagged as potentially fraudulent.

31.    As evidenced by the glaring errors in its reports, Clarity failed to use

reasonable procedures in producing the consumer reports regarding Ms. Sanders

which it sold to many creditors, and potential creditors, as any reasonable

procedure would have determined that information about an unrelated individual

was mixed with Ms. Sanders's data.

32.    Clarity could reasonably foresee that selling reports which contained

data belonging to an unrelated individual would cause significant harm to Ms.

Sanders.

33.     Similarly, Clarity could reasonably foresee that producing credit reports which contain information about another person – especially a person so obviously not the subject of the credit report – would likely cause harm to the consumer for whom the report was created and for others whose information was thereby improperly disclosed.

34.     On or about January 16, 2020, Credit Ninja LLC ("Credit Ninja"), an online lender, requested a report about an individual who has a California driver's license and other substantially different personally identifying information

| 1/16/2022 5:52:15 pm EST zv9c7dbjxp | Credit Application | Online Installment Loan | Credit Ninja/FMS |
|---|---|---|---|

35.     Credit Ninja clearly stated whom it was asking for a report on, providing information pertaining to an unknown individual that was not Ms. Sanders.

36.     In response, Clarity supplied Credit Ninja with a report with Ms. Sanders's personal and private information.

37.     Clarity had no reasonable basis to believe Credit Ninja had asked for a report about Plaintiff or that any other permissible purpose to sell Plaintiff's report to this lender existed, despite a requirement under § 1681b(a)(3) to provide reports only in the event permissible purpose to furnish the report exists.

38.    On or about September 15, 2021, American Web Loan ("AWL"), an online lender, requested a report about an unknown individual with a date of birth September 27, 1977, which is not even close to Ms. Sander's true birthday.

| 9/15/2021 4:03:59 pm EDT ekcy9x0s72 | Credit Application | Online Payday Loan | American Web Loan |
|---|---|---|---|

39.    AWL clearly stated whom it was asking for a report on, providing information pertaining to an unknown individual that was not Ms. Sanders.

40.    In response, Clarity supplied AWL with a report with Ms. Sanders's personal and private information.

41.    Clarity had no reasonable basis to believe AWL had asked for a report about Plaintiff or that any other permissible purpose to sell Plaintiff's report to this lender existed, despite a requirement under § 1681b(a)(3) to provide reports only in the event permissible purpose to furnish the report exists.

42.    On or about August 12, 2021, Ready Set Go Finance ("Ready Set Go"), an online lender, requested a report about an individual with a date of birth August 22, 1981, which is not even close to Ms. Sander's actual date of birth.

| 8/12/2021 4:49:48 pm EDT t142awwt21 | Credit Application | Online Installment Loan | Ready Set Go Finance |
|---|---|---|---|

43.    Ready Set Go clearly stated whom it was asking for a report on, providing information pertaining to unknown individual that was not Ms. Sanders.

44.    In response, Clarity supplied Ready Set Go with a report with Ms. Sanders's personal and private information.

45.    Clarity had no reasonable basis to believe Ready Set Go had asked for a report about Plaintiff or that any other permissible purpose to sell Plaintiff's report to this lender existed, despite a requirement under § 1681b(a)(3) to provide reports only in the event permissible purpose to furnish the report exists.

46.    On or about August 9, 2025, Credit Ninja requested a report about some other unknown individual whose date of birth of August 21, 1984, which again is not even close to that of Ms. Sanders.

| 8/9/2025 7:21:43 pm EDT xr5k9xh6hk | Credit Application | Online Installment Loan | Credit Ninja/FMS |

47.    Once again, in response, Clarity supplied Credit Ninja with a report with Ms. Sanders's personal and private information.

48.    Clarity had no reasonable basis to believe Credit Ninja had asked for a report about Plaintiff or that any other permissible purpose to sell Plaintiff's report to this lender existed, despite a requirement under § 1681b(a)(3) to provide reports only in the event permissible purpose to furnish the report exists.

49.    On or about May 12, 2025, Westlake Financial Services ("Westlake"), an auto lender, requested a report about an unknown individual with a date of birth May 25, 1985.

| 5/12/2025 11:14:47 am EDT ybny1tbgj9 | Credit Application | Auto Loan | Westlake Financial Services |

50.    In response, Clarity supplied Westlake with a report with Ms. Sanders's personal and private information.

51.    Clarity had no reasonable basis to believe Westlake had asked for a report about Plaintiff or that any other permissible purpose to sell Plaintiff's report to this lender existed, despite a requirement under § 1681b(a)(3) to provide reports only in the event permissible purpose to furnish the report exists.

52.    On or about April 11, 2025, Progressive Leasing ("Progressive"), an online lender, requested a report about an individual with a date of birth of September 25, 1990, which again is substantially off from Ms. Sander's actual birthday.

| 4/11/2025 5:54:44 pm EDT cxj36xxfzx | Legitimate Business Need | Online Rent-to-Own | Prog Leasing |

53.    In response, Clarity supplied Progressive with a report with Ms. Sanders's personal and private information.

54.    Clarity had no reasonable basis to believe Progressive had asked for a report about Plaintiff or that any other permissible purpose to sell Plaintiff's report to this lender existed, despite a requirement under § 1681b(a)(3) to provide reports only in the event permissible purpose to furnish the report exists.

55.    Clarity's repeated behavior was a wanton invasion of Ms. Sanders's privacy and also puts her at higher risk of identity theft.

56.    As aforementioned, when disclosing the contents of her Clarity credit file to her, Clarity redacted all but the last four digits of the "seven" driver's licenses Ms. Sanders supposedly has; two of the seven contained the same last four digits, -7000, making the two different license number impossible to disambiguate due to Clarity's redaction of information.

57.    Clarity provides the full license numbers in reports it sells to its customers but redacts the information in disclosures to consumers.

58.    Nothing in the FCRA allowed Clarity to redact this information, but it did so anyway.

59.    Further, every Florida driver's license contains 12 digits and one letter, for a total of 13 characters.

60.    Many of the "Florida" driver's licenses appear to have more than 13 or fewer than 13 characters, meaning they could not even potentially be genuine license numbers and thus could not belong to Ms. Sanders – or anyone.

61.    While Clarity redacted the driver's license information, it did not redact the bank routing and account numbers contained in Ms. Sanders credit file.

62.    Clarity reported Ms. Sanders' work address was "123 MAIN STREET MULBERRY FL," which was apparently furnished to it by the online lender Credit Ninja, which is disclosed by Clarity as "Credit Ninja/FMS."

63.    The address "123 MAIN STREET" is a default, placeholder value utilized by Clarity when no employer address is reported.

64.    No address "123 Main St." in Mulberry exists; further, the address reported by Clarity, "123 STREET MULBERRY FL," conspicuously lacks a ZIP code.

65.    Indeed, Credit Ninja could not have possibly furnished information about Ms. Sanders' employer's address to Clarity since Credit Ninja's loan application does not ask for the applicant's work address.

66.    In sum, "123 MAIN STREET" is simply made-up, placeholder information – a fact well known to Clarity, especially considering the large volume of lawsuits brought against it addressing this very issue.

67.    The only other employment address reported by Clarity for Ms. Sanders was "123 MAIN STREET TAMPA FL" which was also reported by Credit Ninja.

68.    Clarity also incorporated other patently absurd information, like Ms. Sander's income being $0 per month, $275 per month, and $1,550 per month – rate of pay which would be less than Florida minimum wage for full-time work and which substantially underreported her true income.

69.    On the other end of the spectrum, Clarity reported Ms. Sanders income was $36,833 per month and $40,000 per month (i.e., $480,000 per year) which substantially overreports her income.

70.    One of the key intents of Congress in passing the FCRA was to protect the privacy of consumers: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and *a respect for the consumer's right to privacy[1]*." (Emphasis added).

71.    Clarity frequently sells reports about consumers to online lenders who requested reports on unrelated individuals and has been sued many times in the past for these actions. See, e.g., *Alexander Gil vs. Clarity Services, Inc.*, case 8:23-cv-00845, M.D. Fla., April 18, 2023 (sale of report of a Florida consumer to online lender requesting report of unrelated Nevada resident); *Donna Ford vs. Clarity Services, Inc.*, case number 4:22-cv-00301-MW-MAF, N.D. Fla., July 2022 (sale of report of a Florida consumer to online lender requesting report of unrelated male Oregon resident as well as an unrelated male Florida resident).

72.    The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history, income data, number of times the consumer has moved (i.e., changes to the consumer's reported address), and any

---

[1] 15 U.S.C. § 1681(a)(4)

substantial variations of the consumer's name (which could indicate the consumer was attempting to use an alias to obtain credit).

73.    Consequently, Clarity's inclusion of demonstrably false information about Ms. Sanders's income and residential history, which actually belongs to another unrelated individual, had a significant negative impact on Ms. Cintron's ability to obtain new credit.

74.    Clarity's failure to maintain reasonable procedures designed to ensure maximum possible accuracy of data it includes in reports it sells about consumers, including Ms. Sanders.

75.    As a result of Clarity's conduct, Ms. Sanders has suffered damage to her credit scores, damage to her reputation and loss of credit. **SEE PLAINTIFF'S EXHIBIT B.**

76.    Ms. Sanders's Clarity score has been negatively impacted by the inclusion of numerous changes to her bank account information, numerous changes in application information, and numerous changes in home phone information. *Id.*

77.    These changes were a result of the inclusion of the unnamed and unknown individuals' information and not by actions taken by Ms. Sanders.

78.    As the aforementioned inaccuracies continue to report to Ms. Sanders's credit file as of the date of this filing, Ms. Sanders hereby demands Clarity investigate the disputed information outlined above and correct her report.

79.    Ms. Sanders has also suffered severe emotional distress and has spent time and money to correct her file and force Clarity to comply with its statutory obligations, and in procuring counsel.

80.    Ms. Sanders has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to the firm.

## COUNT I
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

81.    Ms. Sanders adopts and incorporates paragraphs 1 - 80 as if fully stated herein.

82.    Clarity violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Sanders, as reasonable procedures would not have resulted in Clarity's inclusion of information concerning other, unrelated individuals into Ms. Sanders's reports, or the inclusion of other false information, including false dates of birth, bank account information, employment address, and income information.

83.    Clarity's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

84.     Clarity's policies could reasonably be foreseen to cause harm to Ms. Sanders.

85.     Clarity is thus liable to Ms. Sanders, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Sanders's actual damages or statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Sanders respectfully requests this Honorable Court enter judgment in her favor, and against Clarity, for:

a.     The greater of Ms. Sanders's actual damages or statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

c.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

d.     Such other relief that this Court deems just and proper.

**COUNT II**
**NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**
**(Pled in the Alternative to Count I)**

86.     Ms. Sanders adopts and incorporates paragraphs 1 - 80 as if fully stated herein and pleads this count strictly in the alternative to Count I.

87.     Clarity failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold to regarding Ms. Sanders, and such

failures could reasonably be seen to cause harm to individuals like Ms. Sanders whose potential lenders and creditors end up receiving inaccurate credit reports on them, causing the consumer to be denied loans or extensions of credit.

88.     Thus, Clarity negligently violated **15 U.S.C. § 1681e(b)** by including information of an unrelated individual in reports sold to Ms. Sanders's potential creditors and lenders.

89.     As such, Ms. Sanders is entitled to her actual damages.

**WHEREFORE,** Ms. Sanders respectfully requests this Honorable Court enter judgment in her favor, and against Clarity, for:

a.      Ms. Sanders's actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees, pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

## COUNT III
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)

90.     Ms. Sanders adopts and incorporates paragraphs 1 - 80 as if fully stated herein.

91.     Clarity violated **15 U.S.C. § 1681b(a)(3)** when it furnished a credit report to Westlake about Plaintiff in response to a request for a report on an unknown individual with a different date of birth, and address.

92.     Clarity violated **15 U.S.C. § 1681b(a)(3)** on at least three separate occasions when it furnished credit reports to Credit Ninja about Plaintiff in response to a request for a report on an unknown individual with a different date of birth, different driver's license and address.

93.     Clarity violated **15 U.S.C. § 1681b(a)(3)** when it furnished a credit report to WithU about Plaintiff in response to a request for a report on an unknown individual with a different date of birth and address.

94.     Clarity violated **15 U.S.C. § 1681b(a)(3)** when it furnished a credit report to AWL about Plaintiff in response to a request for a report on an unknown individual with a different date of birth and address.

95.     Clarity violated **15 U.S.C. § 1681b(a)(3)** when it furnished a credit report to Progressive about Plaintiff in response to a request for a report on an unknown individual with a different driver's license number and date of birth.

96.     Clarity violated **15 U.S.C. § 1681b(a)(3)** when it furnished a credit report to Ready Set Go about Plaintiff in response to a request for a report on an unknown individual with a different driver's license and date of birth.

97.     Clarity had no reason to believe it had permissible purpose to furnish these reports as there are essentially no commonalities between the consumer whom Westlake requested reports on and Plaintiff.

98.     Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

99.     Clarity is thus liable to Ms. Sanders, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Sanders's actual damages and statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Sanders respectfully requests this Honorable Court enter judgment in her favor, and against Clarity, for:

a. The greater of Ms. Sanders's actual damages or statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper

### COUNT IV
### NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)
### (Pled in the Alternative to Count III)

100.    Ms. Sanders adopts and incorporates paragraphs 1 - 80 as if fully stated herein and pleads this count strictly in the alternative to Count III.

101.    Clarity responded to requests from Westlake, Progressive, WithU, AWL, and Credit Ninja to provide a report on an individual not related to Plaintiff, and Clarity responded to Westlake, Progressive, WithU, AWL, and Credit Ninja by providing a consumer report regarding Ms. Sanders.

102.    Thus, Clarity negligently violated **15 U.S.C. § 1681b(a)(3)** when it furnished a report to Westlake, Progressive, WithU, AWL, and Credit Ninja about Plaintiff in response to a request for a report on unknown individuals with a different driver's licenses, dates of birth, and address.

103.    As such, Ms. Sanders is entitled to her actual damages.

**WHEREFORE**, Ms. Sanders respectfully requests this Honorable Court enter judgment in her favor, and against Clarity, for:

a.  Ms. Sanders's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper

## COUNT V
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

104.    Ms. Sanders adopts and incorporates Paragraphs 1 - 80 as if fully restated herein.

105.    Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Ms. Sanders with a redacted version of her Consumer Disclosure.

106.    Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

107.    Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA to provide clear and accurate disclosures.

108.    As a result of its conduct, Clarity is liable to Ms. Sanders pursuant to the FCRA for the greater of Ms. Sanders' actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Sanders respectfully requests this Honorable Court enter judgment against Clarity for:

a.    The greater of Ms. Sanders' actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT VI**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)**
**(Pled in the alternative to Count V)**

109.    Ms. Sanders adopts and incorporates Paragraphs 1 - 80 as if fully restated herein and pleads this count strictly in the alternative to Count V.

110.    Clarity owed Ms. Sanders a legal duty to accurately disclose all the information in her credit file upon her request.

111.    Clarity breached this duty when it only provided Ms. Sanders with a redacted version of her Consumer Disclosure.

112.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Ms. Frederick is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Sanders respectfully requests this Honorable Court enter judgment against Clarity for:

a.  The greater of Ms. Sanders' actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Ms. Sanders hereby demands a trial by jury on all issues so triable.

Respectfully submitted on  September 19, 2025, by:

**SERAPH LEGAL, P. A.**

<u>/s/ Christian E. Cok</u>
Christian E. Cok, Esq.
Florida Bar No.: 1032167
Tel: 813-567-1230 (ext. 307)
CCok@SeraphLegal.com
*Lead Attorney for Plaintiff*

<u>/s/ Thomas M. Bonan</u>
Thomas M. Bonan Esq.
Florida Bar No.: 118103
TBonan@SeraphLegal.com
*Attorney for Plaintiff*

**SERAPH LEGAL, P. A.**
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## <u>ATTACHED EXHIBIT LIST</u>

A.   Clarity's Consumer Disclosure for Ms. Sanders, August 28, 2025 – Excerpts
B.   Ms. Sanders' Clarity Score – September 19, 2025